UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DOUGLAS CORNELL
JACKSON #748757,

        Plaintiff,

v.

UNKNOWN PYNNONEN, et al.,

        Defendants.
_____/

Case No. 2:20-cv-00170

Hon. Hala Y. Jarbou
U.S. District Judge

# REPORT AND RECOMMENDATION

## I. Introduction

This Report and Recommendation (R&R) addresses Defendants' motion for summary judgment. (ECF No. 23.)

State prisoner Douglas Cornell Jackson filed this civil rights action pursuant to 42 U.S.C. § 1983 on September 10, 2020. (ECF No. 1.) Jackson's complaint relates to events at the Baraga Correctional Facility (AMF). Jackson sues Sergeant (Sgt.) Pynnonen and Corrections Officer (CO) Haataja. He alleges that on April 15, 2020, Sgt Pynnonen and CO Haataja were part of an emergency response team that unnecessarily used a chemical agent to remove him from his administrative segregation cell despite his compliance with all orders. (ECF No. 1, PageID.4-6.) Jackson alleges that he lost consciousness during the removal and was then placed in hard restraints for 2 days without a shower or the ability to wash the chemical agent off his body. (*Id.*, PageID.7.) Jackson alleges that he suffered from chemical

burns to his body. (*Id.*, PageID.8.) Jackson says he was returned to his uncleaned cell, which still had chemical agent on every surface. (*Id.*) Jackson says he now suffers with breathing and vision issues. (*Id.*)

Sgt. Pynnonen and CO Haataja filed a motion for summary judgment. (ECF No. 23.) They argued (1) that all of the grievances Jackson filed around the time of the cell extraction were rejected, and (2) that Jackson, who was modified access to the grievance process, failed to comply with the modified access procedures. (ECF No. 24, PageID.105.)

Jackson filed a response. (ECF No. 56.) The key part of his argument is that the Step I response to the grievance he filed on the cell extraction – grievance **AMF 20-04-717-28f** (ECF No. 24-3, PageID.252-256) – indicates that the grievance was reviewed rather than rejected. (*Id.*, PageID.379-80.) The Step I response is shown below with the critical statement highlighted.

> RESPONSE (Grievant Interviewed?) ☐ Yes ☒ No  If No, give explanation. If resolved, explain resolution.)
>
> When you were placed on Modified Access Status you were provided with directions on how to obtain a grievance form. You failed to follow these instructions and your grievance is being returned without investigation as you have obtained this grievance form from a source other than the Step I grievance Coordinator, which violates PD 03. 02. 130.
>
> — Copy Sent to Insp. Office for Review.

(ECF No. 24-3, PageID.255.)

Defendants then filed a reply. (ECF No. 72.) They argued (1) that Jackson knew he was on modified access, (2) that he knew how to file a grievance while on

2

modified access, (3) that he failed to comply with the modified access procedure, and (4) as a result, his grievance was properly rejected. (*Id.*)

The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court deny Defendants' motion for summary judgment because a genuine issue of fact exists regarding whether Jackson properly exhausted his administrative grievance remedies. Jackson filed a Step I grievance raising the issues asserted in this complaint. Although the Step I grievance was rejected and the rejection was upheld through each step of the process, the Step I response indicates that it was sent to the Inspector for review. Defendants have failed to explain why the grievance was forwarded to the Inspector for review or the outcome of the Inspector's review of the grievance. The undersigned concludes that Defendants have failed to explain why the forwarding of the grievance to the Inspector failed to exhaust Jackson's claims under that policy. Accordingly, the undersigned respectfully recommends that this Court deny Defendants' motion for summary judgment.

The undersigned notes that this matter may still be addressed by the Court in a bench trial solely on the issue of exhaustion pursuant to *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

**II. Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of*

*Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly,

---

[1] Disputed issues of fact regarding exhaustion under the Prison Litigation Reform Act (PLRA) may be decided in a bench trial and need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737). And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The

issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the

7

grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id*.

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th

> Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

**IV. Analysis**

Defendants argue Jackson failed to exhaust his administrative remedies by properly exhausting a grievance with respect to his Eighth Amendment claims against them. Jackson asserts that he did exhaust his administrative remedies when he submitted grievance **AMF-20-04-717-28f**. (ECF No. 56, PageID.380.) Jackson's Step I grievance named the Defendants and addressed the issues asserted in this complaint, but his grievance was rejected for failing to follow the rules to obtain grievance forms while on modified access to the grievance process. (ECF No. 24-3, PageID.255.) Jackson's Step I grievance and the MDOC response are shown below.

---

[2] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

9

**MICHIGAN DEPARTMENT OF CORRECTIONS**
**PRISONER/PAROLEE GRIEVANCE FORM**

APR 2 1 2020
BY: _____

4835-4247 10/94
CSJ-247A

Date Received at Step I: 4/21/2020   Grievance Identifier: AMF2010041717298F

Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| DOUGLAS JACKSON | 748757 | AMF | 2-143 | APR. 15, 2020 | APR. 17, 2020 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? APR. 15, 2020
If none, explain why. I ATTEMPTED TO RESOLVE THIS ISSUE WITH PRISON GUARD HAATAJA, AND PYNNONEN, TO NO AVAIL.

CC: FEDERAL JUDGE; OMBUDSMAN.                                                  #1

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. ISSUE: UNNECESSARY AND WANTON INFLICTION OF PAIN. ON APR. 15, 2020, AT APPROX. 8:30 P.M., WHILE I WAS CONFINED IN ISOLATED SEGREGATION, UNIT 2, C-WING. PYNNONEN AND HAATAJA, AS MEMBERS OF THE EMERGENCY RESPONSE TEAM CAME TO CELL # 2-143 WITH OTHERS IN FULL RIOT GEAR. PYNNONEN, ASKED ME TO COMPLY WITH A STRIP SEARCH BECAUSE HE WAS AUTHORIZED TO USE A CHEMICAL AGENT. IT WAS THEN THAT HAATAJA, PUT HIS FACE AND BODY WITHIN ABOUT THREE INCHES OF THE CELL DOOR WINDOW, THEREBY BLOCKING PRISON GUARD LYTIKAINEN'S, CAMERA VIEW OF ME STRIPPING NAKED. (LYTIKAINEN VIDEO TAPED THE INCIDENT) HAATAJA, SAID," REMOVE THE TOWEL FROM YOUR FACE." HOWEVER, I DID NOT HAVE ANYTHING ON MY FACE OR HEAD. HAATAJA STEPPED BACK FROM THE DOOR, AND WITH DIRECT EYE CONTACT FROM APPROX. TWO FEET AWAY, PYNNONEN CLEARLY SAW THAT I DID NOT HAVE ANY-THING TO MY HEAD OR BODY AREA. I SAID," I DON'T HAVE ANYTHING TO MY FACE," IN A LOUD CLEAR VOICE (MY VOICE WAS NOT MUFFLED. DEMOSTRATING THAT MY MOUTH WAS NOT COVERED.) HAATAJA, AGAIN CAME TO THE DOOR (BLOCKING VIEW) AND REPEATED HIS FIRST STATEMENT WHILE LOOKING AT ME COMPLETELY NAKED WITH NOTHING COVERING ANYTHING. PYNNONEN, THEN USED THE CHEMICAL WEAPON AGAINST ME. RELIEF: CIVIL ACTION.

S/ MR. JACKSON
Grievant's Signature

. . . .

RESPONSE (Grievant Interviewed?)  ☐ Yes  ☒ No   If No, give explanation. If resolved, explain resolution.)

When you were placed on Modified Access Status you were provided with directions on how to obtain a grievance form. You failed to follow these instructions and your grievance is being returned without investigation as you have obtained this grievance form from a source other than the Step I grievance Coordinator, which violates PD 03.02.130.

Copy Sent to Insp. Office for Review

Respondent's Signature     4/21/2020       Reviewer's Signature           4/22/20
Respondent's Name (Print)  CRR            Reviewer's Name (Print) ETMJTA  ADW
                           Working Title                                  Working Title

Date Returned to Grievant: 4/20/2020   If resolved at Step I, Grievant sign here.
                                        Resolution must be described above.
                                        Grievant's Signature     Date

DISTRIBUTION: White, Green, Canary, Pink — Process to Step One; Goldenrod — Grievant

Ex. 2, Page 137 of 165

(*Id.*)

Part of the response indicates that Jackson's Step I grievance was rejected because he failed to comply with the Modified Access procedures. That portion of the response is bracketed in blue above. The response also indicates that a copy was sent to the Inspector's Office for review. That portion is highlighted in yellow.

Jackson's Step II appeal confirms that he understood that his Step I grievance was rejected. (*Id.*, PageID.253-254.) Jackson argues that because the Step I response indicated that it was sent to the Inspector's Office for review, he exhausted his grievance remedies because the merits of his claim would have been reviewed. (ECF No. 56, PageID.380.) Jackson argues that under MDOC Policy Directive 03.02.130 L, a grievance that is inspected is considered exhausted. That Policy Directive provides:

> L. If a grievant intentionally files a grievance which is **investigated** and determined to be unfounded which, if proven true, may have caused an employee or a prisoner to be disciplined or an employee to receive corrective action, the grievant may be issued a misconduct report if approved by the Warden or FOA Area Manager; however, major misconduct for Interference with the Administration of Rules shall be issued only if approved by the Warden or FOA Area Manager after consultation with the appropriate Deputy Director or designee. The misconduct report shall be processed as set forth in PD 03.03.105 "Prisoner Discipline". If the grievant is found guilty of misconduct for filing an unfounded grievance, the grievant may be placed on modified access consistent with Paragraphs HH through LL.

(ECF No. 24-2, PageID.113) (emphasis added).

Jackson argues that because his grievance was sent to the Inspector's Office, it was "investigated" and Defendants were placed on notice of his grievance. Jackson then leaps to the conclusion that he exhausted his administrative grievance remedies.

11

Defendants contend that Jackson's grievance was rejected and returned without "investigation" because he failed to follow the rules while on modified access to the grievance process. Policy Directive 03.02.130 KK provides that a prisoner on modified access to the grievance process "shall be able to obtain grievance forms only through the Step I Grievance Coordinator" for the issues he wants to grieve. Jackson did not make a request for a grievance form from the Grievance Coordinator. (Affidavit of Thomas Hamel, Grievance Coordinator; ECF No. 72-2, PageID.560.)

It is clear that Grievance **AMF-20-04-717-28f** failed to properly exhaust Jackson's claims at each step of the standard grievance process. But that does not resolve the issue of whether Jackson's grievance may have been exhausted because it was sent to Inspector's Office for review. Defendants have not explained why the grievance was sent to the Inspector's Office. It could have been sent to the Inspector's Office for a determination of whether Jackson should be issued a misconduct ticket under Policy Directive 03.02.130 L. Alternatively, it could have been sent to the Inspector's Office for a determination of whether Defendants' actions were proper. Defendants' motion is silent on this issue. Policy Directive 03.02.130, Paragraph R states:

> All grievances alleging conduct that falls under the jurisdiction of Internal Affairs shall be referred to Internal Affairs as set forth in PD 01.01.140 "Internal Affairs" even if they would otherwise be rejected. The Manager of Internal Affairs or designee shall notify the Warden or FOA Deputy Director or designee, and either the Inspector or Grievance Coordinator as appropriate, in writing if the grievance is determined to fall within the jurisdiction of Internal Affairs; in such cases, an investigation shall be conducted in accordance with PD 01.01.140 and the grievant notified that an extension of time is therefore needed to respond to the grievance. The Manager of Internal Affairs or designee

12

      also shall notify the Warden or FOA Deputy Director or designee, and the Inspector or Grievance Coordinator as appropriate, if it is determined that the grievance is not within the jurisdiction of Internal Affairs; in such cases, the grievance shall continue to be processed as a Step I grievance in accordance with this policy.

Defendants should have addressed this issue in either their motion or their reply brief. Defendants did not explain what was done after the Step I grievance was sent to the Inspector's Office. Instead, Defendants recognize the issue in their reply brief, but simply state that the grievance was rejected at Step I. (ECF No. 72.) Defendants need to explain to the Court why the grievance was forwarded to the Inspector's Office and what the Inspector's Office did with the grievance after it was received. Defendants cannot simply ignore the fact that the Step I grievance states it was forwarded to the Inspector's Office for review.[3] Based on the record before the Court, the undersigned respectfully recommends that the Court deny the motion for summary judgment because a genuine issue of fact exists regarding whether Jackson exhausted his administrative remedies.

The Court will address Jackson's remaining arguments. Jackson asserts that grievance **AMF-20-04-717-28f** was not properly rejected because he was not timely notified that he was on modified access to the grievance process. Jackson argues that timely notification is an essential element of due process and fairness. Jackson was on modified access to the grievance procedures between September 10, 2019, and September 10, 2020. (ECF No. 72-2, PageID.559.) Jackson submitted grievance

---

[3]     Forwarding the grievance to the Inspector may not be equivalent to forwarding the grievance to Internal Affairs. Defendants did not make that argument and the Court cannot make assumptions not asserted in the record.

13

**AMF-20-04-717-28f** on April 17, 2020. During that period of time, Jackson received notice that he was placed on modified access to the grievance process, and 9 notices that his modified access status was extended. (*Id.*) Jackson had two grievances returned to him on the day that he submitted grievance **AMF-20-04-717-28f** that were rejected because he was on modified access to the grievance process. (ECF No. 24-3, PageID.267, 271.) It is clear that on the date he submitted his Step I grievance in **AMF-20-04-717-28f**, Jackson knew that he was on modified access to the grievance procedures, and he should have known that he had been on modified access since September of 2019.

Jackson has also made five other baseless arguments. First, Jackson argues that he continues to be under the threat of imminent danger. While the Court allowed Jackson to proceed *in forma pauperis* in this case by recognizing the allegations in his complaint that he was under a threat of imminent danger, the statute authorizing the Court to grant *in forma pauperis* status does not establish an imminent danger exception to the requirement that a prisoner exhaust administrative remedies. 28 U.S.C. § 1915(g).

Second, Jackson argues that the AMF law librarian will not assist him by providing him access to the prison law library or legal authority to rebut the Defendants' arguments. The legal issues are well briefed in this motion and the issue before the Court is simply whether Jackson properly exhausted his grievance remedies before he filed his complaint. In addition, Jackson is a very experienced litigant who has filed and litigated numerous cases in this Court.

Third, Jackson argues that Judge Jarbou does not have authority to preside over this case because Chief Judge Jonker did not issue a signed order of reassignment. The notice of reassignment was filed in this case on September 28, 2020. (ECF No. 4.) The notice references Administrative Order number 20-CA-071. (*Id.*) This case was properly assigned to Judge Jarbou.

Fourth, Jackson asserts that he did not make a request for Defendants to waive service of the summons and complaint. The U.S. Marshals Service requested waiver of service of Jackson's complaint because Jackson was granted *in forma pauperis* status. (ECF No. 18 and 19.) Defendants have appeared. Jackson did not request to serve Defendants with a summons and complaint on his own and he has not been prejudiced.

Fifth, Jackson says that the Court did not order the Clerk's Office to return a copy of his complaint to him and, as a result, he does not have a copy of his own complaint. Jackson has demonstrated that he understands the facts that he asserted in his complaint. Jackson has not demonstrated prejudice.

### V. Recommendation

It is respectfully recommended that the Court deny Defendants' motion for summary judgment (ECF No. 23) because a genuine issue of fact exists regarding whether Jackson exhausted his administrative grievance remedies. As noted in the introduction, Defendants may request a bench trial solely on the issue of exhaustion pursuant to *Lee v. Willey*.

Dated: July 15, 2021             /s/ *Maarten Vermaat*
                                                  MAARTEN VERMAAT
                                                  U. S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).