UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| DOUGLAS CORNELL JACKSON #748757, | Case No. 2:20-cv-00170 |
| Plaintiff, | Hon. Hala Y. Jarbou<br>U.S. District Judge |
| v. | |
| UNKNOWN PYNNONEN, et al., | |
| Defendants. _____/ | |

## REPORT AND RECOMMENDATION

**I. Introduction**

This Report and Recommendation (R&R) addresses the November 9, 2021, bench trial or evidentiary hearing on the issue of exhaustion of administrative remedies. On August 2, 2021, this Court denied Defendants' motion for summary judgment on the issue of exhaustion of administrative grievance remedies because a genuine issue of fact remained regarding whether Jackson properly exhausted his administrative remedies on the issues asserted in the complaint.[1] (ECF No. 90.) Defendants requested a bench trial solely on the exhaustion issue and the matter was set for a hearing on November 9, 2021. (ECF Nos. 93 and 101.)

State prisoner Douglas Cornell Jackson filed this civil rights action pursuant to 42 U.S.C. § 1983 on September 10, 2020. (ECF No. 1.) Jackson's complaint relates to

---

[1] The procedural history and the general MDOC grievances procedures are set forth in the RR dated July 15, 2021. (ECF No.78.)

events at the Baraga Correctional Facility (AMF). Jackson sues Sergeant (Sgt.) Pynnonen and Corrections Officer (CO) Haataja. He alleges that, on April 15, 2020, Sgt Pynnonen and CO Haataja were part of an emergency response team that unnecessarily used a chemical agent to remove him from his administrative segregation cell despite his compliance with all orders. (ECF No. 1, PageID.4-6.) Jackson alleges that he lost consciousness during the removal and was then placed in hard restraints for 2 days without a shower or the ability to wash the chemical agent off his body. (*Id.*, PageID.7.) Jackson alleges that he suffered from chemical burns to his body. (*Id.*, PageID.8.) Jackson says he was returned to his uncleaned cell, which still had chemical agent on every surface. (*Id.*) Jackson says he now suffers breathing and vision problems. (*Id.*)

Defendants previously filed a motion for summary judgment that asserted that Jackson had not exhausted his administrative remedies. (ECF No. 23.) This Court denied that motion (ECF No. 90) and Defendants requested a bench trial solely on the issue of exhaustion. The district court may resolve disputed issues relating to exhaustion in a bench trial or evidentiary hearing if a defendant's motion for summary judgment on the issue of exhaustion is denied. "[D]isputed issues of fact regarding exhaustion under the [Prison Litigation Reform Act] present[ ] a matter of judicial administration that could be decided in a bench trial." *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). "Failure to exhaust administrative remedies is an affirmative defense." *Id.* at 677. Defendants bear "the burden to plead and prove by a preponderance of the

2

evidence" that the prisoner-plaintiff failed to properly exhaust his or her claims. *Id.* (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

"Within the context of these evidentiary hearings, federal district or magistrate judges can resolve all genuine issues of material fact related to the exhaustion of administrative remedies." *Alexander v. Calzetta*, No. 2:16-CV-13293, 2018 WL 8345148, at *6 (E.D. Mich. Nov. 30, 2018) (citing *Lee*, 789 F.3d at 677-78), report and recommendation adopted, No. 16-CV-13293, 2019 WL 1011106 (E.D. Mich. Mar. 4, 2019).[2] Due to the dispositive nature of the hearing, magistrate judges provide report and recommendations regarding their factual findings and recommendations of law.

The issues addressed during the bench trial in this case were:

> **(1)** whether Jackson exhausted grievance **AMF 20-04-717-28f** (hereinafter "AMF-717") via either the standard three-step grievance process[3] while he was on modified access to the grievance process[4], or via the Internal Affairs process.

---

[2] A survey of district courts shows that magistrate judges routinely preside over exhaustion evidentiary hearings. *See, e.g., Perry v. Monroe*, No. CIV. 09-239-GPM, 2011 WL 3022229 (S.D. Ill. July 22, 2011); *Alexander v. Salmi*, No. 2:16-CV-96, 2017 WL 3220357 (W.D. Mich. June 27, 2017), report and recommendation adopted, No. 2:16-CV-96, 2017 WL 3190643 (W.D. Mich. July 27, 2017); *Ayotte v. Stemen*, No. 15-13826, 2019 WL 2219739 (E.D. Mich. Feb. 27, 2019); *Alexander*, No. 2:16- CV-13293, 2018 WL 8345148, at *6, report and recommendation adopted, No. 16-CV-13293, 2019 WL 1011106.

[3] The "standard three-step grievance process" is described in Michigan Dept. of Corrections Policy Directive 03.02.130, ¶¶ Q to II.  (Defendants' Exh. A, Pages 4-8.)

[4] **Error! Main Document Only.**   Under Michigan Department of Corrections policy, a prisoner is placed on modified access for filing "an excessive number of grievances which are frivolous, vague, duplicative, non-meritorious, raise non-grievable issues, or

>    **(2)** whether Jackson received proper notice that he was on modified access to the grievance process.
>
>    **(3)** whether Jackson was mistakenly placed on modified access to the grievance process at the time he filed this grievance.
>
>    **(4)** whether a review of Jackson's grievance by the Inspector's Office grievance constituted exhaustion of Jackson's administrative remedies.

Based upon the testimony and evidence presented at the November 9 bench trial, the undersigned concludes that Jackson failed to properly exhaust his grievance remedies prior to filing this lawsuit. First, records provided by Defendants demonstrate that Jackson did not exhaust his remedies via either the standard three-step grievance process or the Internal Affairs process. Jackson's contentions regarding his modified access designation – that he had not received proper notice of this designation and that the designation was improper – are meritless. The evidence presented to the Court clearly demonstrates that Jackson knew he was on modified access and that this designation was warranted. Finally, and most importantly, the evidence shows that Inspector Cummings' review of materials relating to the cell

---

contain prohibited language. . .or [are] unfounded." Mich. Dep't of Corr., Policy Directive 03.02.130, ¶ JJ to NN. The modified access period is ninety days and may be extended an additional thirty days for each time the prisoner continues to file a prohibited type of grievance. *Id.* While on modified access, the prisoner only can obtain grievance forms through the Step I coordinator, who determines whether the issue is grievable and otherwise meets the criteria under the grievance policy. *Id.*, ¶ MM. The Sixth Circuit has addressed modified access to the grievance process in an unpublished opinion and has held that such modified access does not deny a Michigan prisoner the right or ability to seek redress for meritorious grievances. Rather, it merely requires the prisoner to obtain permission from the grievance coordinator to file a grievance. *Hartsfield v. Mayer*, 76 F.3d 378, 1996 WL 43541, **3 (6th Cir. 1996).

extraction at issue in this case does not constitute exhaustion. In the opinion of the undersigned, the Inspector's Office's preliminary review was simply an intermediate step in the investigative process that served to ensure Jackson's grievance was considered by the right investigative body. Thus, the Inspector's Office's preliminary review did not provide an alternative path for Jackson to exhaust his administrative remedies. Here, Inspector Cummings concluded that such a referral to Internal Affairs was not necessary. Accordingly, Jackson was obligated to exhaust via the standard three-step process, which he failed to do.

It is respectfully recommended that the Court dismiss Jackson's complaint without prejudice due to his failure to properly exhaust his administrative remedies prior to filing this federal cause of action.

**II. Analysis**

**A. Witnesses and Admitted Exhibits**

During the hearing, MDOC Grievance Managers Richard Russel and Thomas Hamel, AMF Assistant Deputy Warden Eric Petaja, MDOC Inspector Greg Cummings, and Plaintiff Jackson testified. The Court admitted the following exhibits:

(1) Defendants' Exhibit A, MDOC Policy Directive 03.02.130;

(2) Defendants' Exhibit B, Step III Grievance Report and Step III Grievances limited to pages 8 and 134-137, and 142-165;

(3) Defendants' Exhibit C, 9/12/2019, Prisoner Grievance Modified Access Status Memos and Grievance Summary Report;

(4) Defendants' Exhibit D, 4/22/2020, email from Petaja to Cummings; and

(5) Defendants Exhibit E, 5/5/2020, memo from Cummings to Petaja.

Also admitted into the record are Jackson's responses to memorandums, that he filed after the hearing at ECF No. 114-1, PageID.996-1002.

### B. Exhaustion via the Standard Three-Step Process and the Internal Affairs Process (Issue 1)

Jackson attempted to initiate the grievance process by filing the Step I grievance shown below.

[Grievance form image: Michigan Department of Corrections Prisoner/Parolee Grievance Form, stamped APR 21 2020. Date Received at Step I: 4/21/2020. Grievance Identifier: AMF 20 04 1717 28F. Name: Douglas Jackson, Number: 748757, Institution: AMF, Lock Number: 2-143, Date of Incident: APR. 15, 2020, Today's Date: APR. 17, 2020.

"What attempt did you make to resolve this issue prior to writing this grievance? On what date? APR. 15, 2020. If none, explain why. I ATTEMPTED TO RESOLVE THIS ISSUE WITH PRISON GUARD HAATAJA, AND PYNNONEN, TO NO AVAIL.

CC: FEDERAL JUDGE; OMBUDSMAN.

ISSUE: UNNECESSARY AND WANTON INFLICTION OF PAIN. ON APR. 15, 2020, AT APPROX. 8:30 P.M., WHILE I WAS CONFINED IN ISOLATED SEGREGATION, UNIT 2, C-WING. PYNNONEN AND HAATAJA, AS MEMBERS OF THE EMERGENCY RESPONSE TEAM CAME TO CELL# 2-143 WITH OTHERS IN FULL RIOT GEAR. PYNNONEN, ASKED ME TO COMPLY WITH A STRIP SEARCH BECAUSE HE WAS AUTHORIZED TO USE A CHEMICAL AGENT. IT WAS THEN THAT HAATAJA, PUT HIS FACE AND BODY WITHIN ABOUT THREE INCHES OF THE CELL DOOR WINDOW, THEREBY BLOCKING PRISON GUARD LYTIKAINEN'S, CAMERA VIEW OF ME STRIPPING NAKED. (LYTIKAINEN VIDEO TAPED THE INCIDENT.) HAATAJA, SAID," REMOVE THE TOWEL FROM YOUR FACE." HOWEVER, I DID NOT HAVE ANYTHING ON MY FACE OR HEAD. HAATAJA STEPPED BACK FROM THE DOOR, AND WITH DIRECT EYE CONTACT FROM APPROX. TWO FEET AWAY, PYNNONEN CLEARLY SAW THAT I DID NOT HAVE ANY-THING TO MY HEAD OR BODY AREA. I SAID," I DON'T HAVE ANYTHING TO MY FACE," IN A LOUD CLEAR VOICE (MY VOICE WAS NOT MUFFLED. DEMOSTRATING THAT MY MOUTH WAS NOT COVERED.) HAATAJA, AGAIN CAME TO THE DOOR (BLOCKING VIEW) AND REPEATED HIS FIRST STATEMENT WHILE LOOKING AT ME COMPLETELY NAKED WITH NOTHING COVERING ANYTHING. PYNNONEN, THEN USED THE CHEMICAL WEAPON AGAINST ME. RELIEF: CIVIL ACTION.

Grievant's Signature: s/ MR. JACKSON"]

(Defendants' Exh. B, Page 137 of 165, ECF No. 106-3, PageID.887.)

AMF Grievance Coordinator Hamel testified that prisoners on modified access are required to contact him prior to filing a grievance. He also testified that Jackson

6

had not done so. Accordingly, this grievance – AMF-717 – was rejected. The grievance response, which reflects the rejection, is shown below.

(*Id.*)

The remainder the documents associated with AMF-717 show that this rejection was upheld through Step II and III appeals. (*See* Defendants' Exh. B, Page 136 of 165 (Step II decision), Page134 of 165 (Step III decision), and Page 8 of 165 (Step III Grievance Report).)

In Jackson's case, an annotation added to the Step I response created the possibility that Jackson's complaint was addressed on the merits, thus leading to the possibility that he had, in fact, exhausted his remedies despite the Step I rejection. That annotation is shown below with highlighting.

7

[Grievance response form with handwritten note "Copy Sent to Insp. Office for Review." highlighted; signatures and dates 4/21/2020, 4/22/20; Date Returned to Grievant: 4/30/2020. Marked "Jackson v. Pyyhtonen Bench Trial" and "Defs' Ex. B Page 137 of 165".]

The testimony and evidence submitted during the hearing of this matter established two paths available for Jackson to properly exhaust his administrative grievance remedies. First, Jackson could pursue the standard three-step grievance process set forth in MDOC PD 03.02.130, ¶¶ Q to II. (Defendant's Exh. A.) Alternatively, pursuant to MDOC PD 03.02.130, ¶ R, Jackson's allegations could have been referred to Internal Affairs for investigation. And, if Internal Affairs had conducted an investigation, then Jackson's claim would have been exhausted. *See Miller v. Klee*, No. 17-11006, 2018 WL 1354473, at *9 (E.D. Mich. Feb. 23, 2018), report and recommendation adopted, No. 17-11006, 2018 WL 1326382 (E.D. Mich. Mar. 15, 2018) (noting that district courts in the Eastern District of Michigan have concluded that the Internal Affairs process exhausts a grievance) (collecting cases). It should be noted that Defendants do not argue that an Internal Affairs investigation would not exhaust a grievance.

Here, the undisputed evidence shows that the allegations set forth in Jackson's Step I grievance were not investigated by Internal Affairs. AMF Inspector Cummings testified that he reviewed Jackson's grievance and the Critical Incident Report (CIR)

8

and video associated with the cell extraction and decided that an Internal Affairs investigation was not warranted. The documentary evidence provided by Defendants confirms this testimony. First, on April 22, 2020, Assistant Deputy Warden Eric Petaja forwarded Jackson's grievance to Inspector Cummings because, as Petaja testified, all grievances that allege excessive force, regardless of disposition, are forwarded to the Inspector's Officer for a preliminary review. Asst. Deputy Warden Petaja sent Cummings an email asking to conduct a preliminary review of the matter. That email is shown below.

> **Petaja, Eric (MDOC)**
>
> **From:** Petaja, Eric (MDOC)
> **Sent:** Wednesday, April 22, 2020 11:49 AM
> **To:** Cummings, Craig (MDOC)
> **Cc:** Peterson, Dennis M. (MDOC); Hamel, Thomas C. (MDOC); Niemi, Steven W. (MDOC); Minerick, Shawn (MDOC)
> **Subject:** Excessive Force Claim- Jackson 748757
>
> Craig,
>
> Please conduct a preliminary review and contact IA regarding jurisdiction.
>
> I believe a CIR was completed and reviewed by the administration.
>
> I'll place the original in your mail box.
>
> Eric

(Defendants' Exh. D, ECF No. 106-5, PageID.956.)

Then, on May 5, 2020, Cummings reported to Petaja that he had not found evidence to support Jackson's claims. That email is shown below.

> FROM:     C. Cummings, Inspector
>
> SUBJECT:     Jackson #748757 Excessive Force claim
> Grievance Identifier: AMF2004-71728f
>
> Eric,
>
> On 4/17/2020, Jackson submitted a Step I grievance alleging unnecessary and wanton infliction of pain. Jackson claims Sgt. Pynnonen and C/O Haataja, while on a move team, used chemical agent when he had complied with staff orders. This incident was videotaped and documented in its entirety and retained in Critical Incident AMF-35-2020-C which was reviewed by Deputy Warden Peterson.
>
> I reviewed the above incident and did not find any evidence to substantiate the alleged staff excessive force claims. IA K. Warner informed the Inspector's office all excessive force allegations will be reviewed by the Warden to determine if a formal investigation needs to be initiated. Attached is a copy of the Critical Incident.

(Defendants' Exh. E, ECF No. 106-6, PageID.958.)

Cummings testified that MDOC officials at AMF did not take any further action with respect to Jackson's claims after he wrote the memo shown above.

Based on this evidence and testimony, the undersigned concludes that Jackson did not exhaust his allegations via either the standard three-step process or the Internal Affairs process.

### C. Modified Access to the Grievance Procedures (Issues 2 and 3)

Jackson challenges two aspects of his modified access designation. First, he argues that he did not receive proper notification that he was on modified access to the grievance process. The evidence presented during the hearing establishes otherwise. Jackson initially testified that he did not receive notice of his placement of modified access to the grievance process. Upon further questioning, Jackson admitted that he did receive notifications that he was on modified access to the grievance process. At the hearing, Jackson admitted that he received notice and had knowledge

that his modified grievance access was extended through the period when he filed his Step I grievance **AMF-717**. Jackson admitted receiving a Memorandum dated January 16, 2020, from Acting Warden Sarah Schroeder informing him that his modified grievance access was extended based upon his unwillingness to grieve responsibly. Warden Schroeder's memo to Jackson is shown below.

**Michigan Department of Corrections**
*"Committed to Protect, Dedicated to Success"*

**Memorandum**

DATE: January 16, 2020

TO: Prisoner Jackson #748757 (2-103)

FROM: Sarah Schroeder, A/Warden

SUBJECT: Prisoner Grievance Modified Access Status – EXTENSION OF STATUS

You are currently on modified grievance access. This means that you can only obtain grievance forms from the Grievance Coordinator and may only submit grievance forms regarding issues which have been determined by the Grievance Coordinator to be legitimate issues. You have demonstrated an inability/unwillingness to grieve responsibly. You have filed five (5) grievance form(s) in violation of PD 03.02.130 while your access to the grievance process had been modified. For this reason, your modified access status has been extended for thirty (30) days.

> If you feel that you have an issue which qualifies as an issue which can be grieved, you may write to the grievance coordinator, clearly explaining your complaint including all pertinent information, e.g., dates, persons involved, etc. If the grievance coordinator concurs with the request for a grievance form, one will be forwarded to you. You must then use the grievance form to address that issue only.
>
> Your use of the grievance process will continue to be monitored to determine if you should remain on modified access status or receive an extension for violations.
>
> cc: ADD Napel
> Office of Prisoner Affairs
> Grievance Coordinator Hamel
> Unit 2 Staff
> Counselor File
> File
>
> SS/kah
>
> **EXPIRES: 05/10/2020**

(Defendants' Exh. C, Page 17 of 38, ECF No. 106-4. PageID.933.) This memo confirms that Jackson was on modified access when he filed his Step I grievance on April 17, 2020. Jackson further acknowledged that he had to write the grievance coordinator to receive approval to obtain a grievance form.

In addition, during the relevant period, Jackson received several rejected grievances due to his failure to properly follow procedure while on modified access status. (Defendants' Exh. B, Pages 11-16.) The evidence presented during the hearing establishes that Jackson was aware that he was on modified access to the grievance process and understood the procedures for obtaining grievances while on modified access status.

Second, Jackson argues that he was mistakenly placed on modified access to the grievance process. Jackson presented no evidence showing that his placement on modified access to the grievance process was improper. The overwhelming evidence establishes that Jackson was placed on modified access to the grievance process

12

because he repeatedly filed multiple baseless grievances.  (Defendants' Exh. C, ECF No. 106-4, PageID.917-954.)

**AMF-717** was rejected due to Jackson's failure to comply with the requirement that he obtain a grievance form from the Grievance Coordinator while on modified access to the grievance process.  As stated above, Jackson was aware that he was on modified access to the grievance process and of the procedure to properly obtain grievance forms.  In the opinion of the undersigned, Jackson's contentions regarding his modified access designation are meritless.

### D. Inspector's Office's Review (Issue 4)

The primary issue here is whether Inspector Cummings's review of the CIR and video from the cell extraction was sufficient to exhaust of Jackson's claim.  Cummings testified that he reviewed the entire CIR and watched the associated video.  He stated that he did not interview witnesses.  He also described his review as a "preliminary" review, which he undertook for the limited purpose of deciding whether a referral to Internal Affairs was warranted.  And he said that this type of preliminary review was standard whenever an allegation like Jackson's arose.  On cross examination by Jackson, Inspector Cummings acknowledged that his review was a "merits review" and that he made independent findings of fact.

Jackson contends that Cummings's review was sufficient and that it constituted exhaustion of his claim.  In other words, Jackson argues that he was not required to take any other action after the review in order to exhaust.  Jackson argued during the hearing that the holding in *Reed-Bay v. Pramstaller*, 603 F.3d 322 (6th Cir. 2010)

13

applies to this case.[5] Jackson argues that the Inspector's investigation at Step I of his grievance was a merits-based review and the MDOC waived the fact that he was on modified access to the grievance process while conducting a merits-based review at Step I.

As noted above in discussing the first issue, Jackson's allegations of excessive force were not investigated by either a Step I grievance respondent in the standard three-step grievance process or by Internal Affairs. For the following reasons, the undersigned concludes that Inspector Cummings's preliminary review failed to exhaust Jackson's claim even though Cummings conducted a merits-based review of the allegations.

First, Inspector Cummings's preliminary review was an intermediate step in the grievance process. His role was simply to decide which investigative pipeline would handle Jackson's claim. To make this determination, Cummings would necessarily be required to read and review materials associated with the claim and then make a determination. He essentially served as a traffic cop directing the flow of grievance traffic.

Second, Cummings's preliminary review was not qualitatively akin to the type of review that would be conducted in either the standard three-step grievance process or by Internal Affairs. MDOC PD 03.02.130, ¶¶ AA to CC, sets forth steps that a Step I respondent must undertake in order to complete an investigation in the standard

---

[5]   In Jackson's response to Defendant's Notice of Supplemental Authority, filed after the hearing, he stated that *Reed-Bey* "appears to be different than" the facts in this case because of the review conducted by Inspector Cummings. (ECF No. 116.)

three-step grievance process. (Defendants' Exh. A, page 6.) And MDOC PD 01.01.140 (eff. date July 1, 2018) sets forth the different options the Internal Affairs has to complete an investigation.[6] Both Policy Directives call for more in-depth investigative steps than those undertaken by Inspector Cummings in his preliminary review.

Jackson's reliance of *Reed-Bey* is misplaced. In *Reed-Bey*, the Sixth Circuit concluded that "[w]hen prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we." 603 F.3d at 325. In Jackson's case, there is no indication that the MDOC declined to enforce their own procedural rules. To the contrary, Inspector Cummings simply decided whether Jackson's claim would be handled according to the standard three-step grievance process or by Internal Affairs. Thus, MDOC did not decline to apply their own rules. Furthermore, *Reed-Bey* only applies when the MDOC makes a merits-based response at each step of the grievance process. *Cook v. Caruso*, 531 Fed. Appx 554, 563 (6th Cir. 2013). That did not happen here.

In the opinion of the undersigned, the Inspector's Office's preliminary investigation was simply an intermediate step in the investigative process that served to ensure that Jackson's grievance was considered by the right investigative body. Thus, the Inspector's Office's preliminary review did not provide an alternative path for Jackson to exhaust his administrative remedies.

---

[6] *See* https://www.michigan.gov/corrections/0,4551,7-119-1441_44369---,00.html (last visited Nov. 15, 2021).

### III. Recommendation

It is respectfully recommended that the Court dismiss Jackson's complaint without prejudice for his failure to properly exhaust his administrative grievance remedies.

Dated: November 22, 2021          /s/ *Maarten Vermaat*
                                  MAARTEN VERMAAT
                                  U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).